UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANA MARIA MARQUES DaSILVA :
:
v. : C.A. No. 11-255M
:
MICHAEL J. ASTRUE :
Commissioner of the Social Security :
Administration :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on June 23, 2011 seeking to reverse the decision of the Commissioner. On December 29, 2011, Plaintiff filed a Motion to Reverse or Remand Commissioner's Decision. (Document No. 6). On January 26, 2012, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 7)

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 7) be GRANTED and that Plaintiff's Motion to Reverse or Remand Commissioner's Decision (Document No. 6) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 30, 2009 alleging disability since November 28, 2007. (Tr. 92-95). The application was denied initially on May 28, 2009 (Tr. 43) and on reconsideration on October 22, 2009. (Tr. 44). Plaintiff requested an administrative hearing on January 15, 2010. (Tr. 55). On December 9, 2010, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 17-42). The ALJ issued an unfavorable decision to Plaintiff on January 28, 2011. (Tr. 4-16). The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in finding her testimony only "somewhat credible" regarding the severity of her symptoms and in giving only "some weight" to the findings of Dr. Michael Drew, a treating physician.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's findings are supported by substantial evidence and thus must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – <u>i.e.</u>, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV.    THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A.    Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

   1. **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>  (1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>  (2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>  (3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>  (4)  Treatment, other than medication, for relief of pain;
>
>  (5)  Functional restrictions; and
>
>  (6)  The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.  APPLICATION AND ANALYSIS

Plaintiff was fifty-six years old on the date of the ALJ's decision. (Tr. 23). Plaintiff completed the eleventh grade (Tr. 119) and worked in the relevant past as a CNA and a jewelry assembler. (Tr. 115). Plaintiff alleges disability due to back and right hand problems, high blood pressure, thyroid and cholesterol issues. (Tr. 114).

On December 20, 2007, Dr. Michael Drew noted that Plaintiff developed back and leg pain after she tried to push a patient onto a stretcher in August. (Tr. 164). He also noted that while Plaintiff continued to have pain in her back that radiated down her right leg, she was still working. Id. Dr. Drew then observed that Plaintiff had some back pain on examination, she was a fair medical historian, and her symptom description was "not very good." Id. He further noted that although Plaintiff had pain on forward flexion in her mid lumbar spine, and her right straight leg raising was positive at sixty degrees; she had no spinal abnormalities or increased lordosis, her neurological and vascular examinations were normal, and there were no sensory, motor or reflex changes noted. (Tr. 165). She was prescribed pain medication pending an MRI. Id.

The following month, Plaintiff reported to Dr. Drew that her condition had improved on Indocin and she felt "much better." (Tr. 166). Dr. Drew also found that although Plaintiff's right straight leg raising was positive at seventy degrees, she had better motion, her left straight leg raising was negative, her neurological findings were normal and her MRI only revealed mild degenerative changes with some disc bulging but no significant herniation. (Tr. 166, 250). Plaintiff was continued on Indocin and referred to physical therapy. (Tr. 166).

On February 26, 2008, Plaintiff presented to Memorial Hospital of Rhode Island, complaining of chronic lower back pain that radiated down both of her legs into her feet. (Tr. 151). Plaintiff stated that normally she would rate her pain as five out of ten, but since yesterday her pain was an eight out of ten. Id. On examination, the attending physician found that Plaintiff was tender to palpation in her lower lumbar spine. (Tr. 153). At discharge, Plaintiff was informed that she might need to restart physical therapy or obtain another MRI. (Tr. 157).

On April 18, 2008, Dr. Drew observed that, while Plaintiff had eighty degrees of flexion in her lumbar spine, her right straight leg raising was positive at seventy degrees, and she was diffusely tender across her lower lumbar spine; her neurological findings remained normal. (Tr. 168). He concluded that Plaintiff could not perform her job at the nursing home, but she could perform "light sedentary work," though that type of work was not available from her employer. Id. Two months later, Dr. Drew found that Plaintiff was generally doing well, as she had no swelling, there was only mild diffuse tenderness in her lumbar spine muscles, her neurological findings were normal, and other than some tenderness across her lower back, there were no other significant findings. (Tr. 169).

On September 5, 2008, Dr. Drew observed that Plaintiff was tender in her lumbar spine, and she "does not" flex more than twenty degrees, but her straight leg raising was only mildly symptomatic at seventy degrees, and her neurological findings were normal. (Tr. 171). He also noted that Plaintiff's MRI revealed some disc protrusion at L4-5 with mild central stenosis, and as treatment, he recommended epidural cortisone shots. (Tr. 171).

On October 28, 2008, Plaintiff presented to Dr. Vincent A. Armenio for an initial visit to establish care for her chronic lower back pain. (Tr. 162). Plaintiff reported that she suffered an injury in August 2007. Id. On examination, Dr. Armenio observed that Plaintiff had mild suprapubic tenderness to deep palpation, her neurological findings were grossly intact, and there was no edema in her lower extremities. Id. Three days later, Dr. Drew found that Plaintiff was tender at L4-5 and straight leg raising produced pain at seventy degrees bilaterally, but her neurological findings were normal. (Tr. 173). He concluded that while Plaintiff could not return to work as a nursing assistant, she might be able to return to some other light duty job. Id.

Dr. Armenio noted on November 10, 2008, that Plaintiff's back x-ray and abdominal/pelvic ultrasounds were normal, as were her two lumbosacral spine MRIs, and she had no edema in her lower extremities. (Tr. 161). Ten days later, he noted that Plaintiff's MRI revealed that there were no significant abnormalities in her lumbar and lower thoracic vertebrae. (Tr. 160). Dr. Armenio also noted that Plaintiff continued to have chronic lower back pain, but the "fairly underwhelming" MRI results failed to explain her symptoms. Id.

On December 5, 2008, Dr. Drew determined that Plaintiff was "doing pretty well from the standpoint of her back." (Tr. 174). He also noted that Plaintiff should reconsider her primary care physician's recommendation that she have cortisone injections since she did not have a lot of pain.

Id. Dr. Drew concluded that he "did not believe that [Plaintiff] needs an epidural cortisone injection since her pain is not severe and certainly not severe enough to warrant doing this," and instead, she should engage in continued active exercise. Id. Six weeks later, Plaintiff reported to Dr. Drew that she wanted to have the injection, as she felt that her pain had increased. (Tr. 175). His objective findings from that appointment were essentially unchanged from Plaintiff's previous examination. (Tr. 173, 175).

Dr. Drew found on June 26, 2009, that while Plaintiff was tender at the lumbosacral junction, experienced pain on forward flexion of her lumbar spine at about sixty degrees, and had positive straight leg raising at sixty degrees bilaterally; she had minimal pain on extension, and her neurological examination was negative. (Tr. 246). He also noted that epidural steroid injections were now Plaintiff's "treatment of choice." Id. On October 9, 2009, Dr. Drew stated that Plaintiff's diagnosis was lumbar disc degeneration with chronic back and leg pain. (Tr. 245). He added that although Plaintiff had some pain on forward bending in her lower lumbar spine; there was minimal tenderness in that area and no lateral tenderness, straight leg raising only caused mild pain in her left back, and her neurological examination remained normal. Id.

Plaintiff presented to Rhode Island Hospital on January 6, 2010, for follow-up of her back pain. (Tr. 202). Plaintiff reported that she believed that Naproxen had somewhat relieved her pain, steroid injections had helped her pain for several months, and physical therapy mildly improved her symptoms. Id. Dr. Rebekah Gardner, then observed that Plaintiff was tender to palpation over L4-5 and paraspinally as well, and had pain when she elevated her legs; however, her extremities, strength, and joint and neurological examinations were normal, and her sensation was intact. (Tr. 203). He added that Plaintiff's November 2009 CT scan and MRI/MRA of the brain were normal.

Id. As treatment, Dr. Gardner referred Plaintiff for physical therapy and an orthopedic consultation, and provided counseling regarding weight loss. Id.

On May 20, 2010, Plaintiff reported that she did not feel that hydrotherapy was helpful, and therefore, she did not attend sessions at the YMCA pool. (Tr. 232). On examination, Dr. Katie Fillion found that Plaintiff was tender along her paraspinal muscles, she had significant pain with straight leg raising bilaterally, and her MRI revealed mild disc disease with no impingement or other significant problems. (Tr. 232-233). She noted in her Assessment and Plan "back pain as she does seem to have pain in the muscular distribution fibromyalgia is a possibility that we are considering." (Tr. 233). Two months later, Plaintiff stated that neither physical nor pool therapy were helpful, her steroid injections had no effect, and she believed that her MRI demonstrated that she had stenosis. (Tr. 237). The doctor then observed that while she was tender along her lower lumbar paraspinal muscles, and had pain with right straight leg raising; she was in no apparent distress, and her motor and sensory functions were intact. Id.

On September 2, 2010, Dr. Fillion noted that Naproxen was somewhat relieving Plaintiff's pain, and she had no weakness, gait abnormalities, or pain radiating into her legs. (Tr. 241). She then found that Plaintiff was in no apparent distress, and she had minimal tenderness in her lower back and central region, but she was tender along her paraspinal muscles, and had fourteen of eighteen positive tender points. Id. Dr. Fillion concluded that Plaintiff's primary complaint seemed to be related to fibromyalgia, and she provided Plaintiff with medication that would alleviate her pain "so that she can do regular activities of daily living," and hopefully allow her to return to work. (Tr. 241-242). She went on to state that she discussed Plaintiff's disability paperwork with her at "great length," and informed Plaintiff that "she could return to work," but at a different job. (Tr.

242). Dr. Fillion added that Plaintiff seemed "very upset" with her opinion, but hopefully with changes in her medication and a new plan "she will begin to feel better and will agree that sometime soon she can return to work." Id.

On May 26, 2009, Plaintiff's records were reviewed by a non-examining physician. (Ex. 4F). Dr. Joseph Callaghan determined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, and sit, and stand/walk for about six hours in an eight-hour day. (Tr. 178). He also concluded that Plaintiff was limited to occasional stooping, kneeling, crouching, crawling, and climbing ladders, and she could not work around unprotected heights. (Tr. 179, 181). In other words, he determined that Plaintiff could perform a range of light work as defined in 20 C.F.R. § 404.1567(b).

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4. (Tr. 15). At Step 2, the ALJ found that Plaintiff's degenerative disc and joint disease were "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c). (Tr. 9). The ALJ discussed Plaintiff's recent fibromyalgia diagnosis at Step 2 but did not find it to be a severe impairment because the diagnosis had not "lasted 12 months" and there was no indication it was expected to do so. (Tr. 10). Also, the ALJ accurately observed that the evidence of record identified chronic low back pain as Plaintiff's severe impairment. Id. As to RFC, the ALJ determined that Plaintiff could perform a full range of sedentary work with exceptions for work at unprotected heights, with dangerous machinery and with automotive equipment. (Tr. 11). Based on this RFC and testimony from the VE, the ALJ determined at Step 4 that Plaintiff was not disabled because she was capable of performing her past relevant work as a jewelry assembler. (Tr. 15).

**B.     Plaintiff Has Shown No Error in the ALJ's Consideration of the Evidence of Record**

Plaintiff challenges the ALJ's Step 2 finding that her fibromyalgia was not a severe impairment under 20 C.F.R. § 404.1520(c). (Tr. 10). Under 20 C.F.R. § 404.1520(a)(4)(ii), the regulations indicate that Step 2 of the sequential evaluation process considers whether the claimant has a severe, medically determinable impairment "that meets the duration requirement in § 404.1509." The "duration requirement" provides that an impairment is not considered in determining disability under the Social Security Act unless it has "lasted or [is] expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Here, Plaintiff was consistently treated for low back pain following a work-related incident dating back to August 2007. On May 2, 2010, Dr. Fillion first mentions the "possibility" of fibromyalgia. (Tr. 233). There are no other prior diagnoses or suggestions of fibromyalgia in the record.[1] The only other subsequent reference to fibromyalgia is in Dr. Fillion's September 2, 2010 treatment note in which she identifies Plaintiff's primary complaint as "chronic low back pain" and states that "[i]t seems likely that [Plaintiff's] primary complaint is related to fibromyalgia." (Tr. 241). Since the ALJ rendered his decision in early 2011, it is undisputable that there was not sufficient longitudinal evidence of Plaintiff's fibromyalgia in the record to meet the duration requirement as correctly found by the ALJ. (Tr. 10). Further, Dr. Fillion discussed treatment options with Plaintiff on September 20, 2010 and indicated that "hopefully with changes in her medications and the new plan, [Plaintiff] will begin to feel better and will agree that sometime soon

---

[1] Although Plaintiff asserts that she complained of and Dr. Drew found tender points dating back to 2007, Plaintiff does not cite to any portion of the administrative record for support. See Local Rule Cv 7(d)(4) (regarding the need to provide record citations in administrative appeals); see also Desjardins v. Astrue, 2009 WL 3152808 at *1 (D. Me. Sept. 28, 2009) (recognizing that claimant bears the burden of proof at Step 2).

she can return to work." (Tr. 242). Finally, Plaintiff does not identify and medical evidence in the record which definitively establishes a fibromyalgia diagnosis prior to September 2, 2010 or the severity or prognosis of the condition.

Plaintiff also argues that the ALJ erred by finding her testimony only "somewhat credible" because it is corroborated by "the long and well documented history of chronic back pain" in the medical record. However, in his decision, the ALJ states that "[g]reat weight is given to the medical evidence of record, which indicates that the claimant has experienced chronic lower back pain." (Tr. 13). However, after thoroughly discussing the medical evidence and Plaintiff's reported activities of daily living, the ALJ simply did not credit Plaintiff's assertion that she could not sit for more than 20 minutes and has to be in her recliner due to constant pain. Id. The ALJ did not completely reject her testimony and, as to RFC, determined that Plaintiff was limited to a range of sedentary work and thus he clearly gave some meaningful weight to her subjective pain complaints. (Tr. 11).

Plaintiff has shown no error in the ALJ's assessment of her credibility. While reasonable minds could differ as to the interpretation of this record and the weight accorded to Plaintiff's subjective assertions as to her pain and functional limitations, the issue in this case is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). Rather, the issue is whether the ALJ's conclusions have adequate support in the record. Since they do, there is no basis upon which to reject them in this case.

Finally, Plaintiff contends that the ALJ erred by giving only "some" weight to the findings of Dr. Drew, a treating physician. Dr. Drew first treated Plaintiff for back pain approximately four months after she was injured at work in August 2007. On October 31, 2008, Dr. Drew agreed that Plaintiff could not return to work as a nursing assistant due to back pain but indicated that she may be able to perform "some other light duty job." (Tr. 173). As to treatment, he opined that there was not "much more we can do" and that Plaintiff is "going to need to continue to exercise to strengthen her back, and I expect that she will see some slow improvement." Id. Later, in 2009, Dr. Drew "filled out" "disability papers" for Plaintiff and indicated that "[a]t this point, she remains disabled from any lifting, bending, or stooping because of her back." (Tr. 246, 248).

Dr. Drew is a treating specialist and, under the treating physician rule (20 C.F.R. § 404.1527(d)), his opinions are generally entitled to controlling weight if supported by medical evidence and consistent with the record as a whole. Here, the ALJ discussed Dr. Drew's opinions in detail and gave "some weight" to his findings. The ALJ disagreed with Dr. Drew to the extent he concluded that Plaintiff was unable to do the occasional lifting, bending and stooping required by sedentary work. (Tr. 15). In essence, the ALJ determined that the record as a whole did not support Dr. Drew's opinion that Plaintiff could do no lifting, bending or stooping. The ALJ was not alone in this assessment. In particular, Dr. Callaghan reviewed the medical records as of May 26, 2009 including Dr. Drew's treatment records and opined that Plaintiff could perform light work which involved frequent lifting of up to ten pounds and occasional stooping, kneeling, crouching and crawling. (Tr. 178-179). Dr. Callaghan's conclusion was affirmed by Dr. Hanna based on his assessment of the medical records through October 22, 2009. (Tr. 197). Obviously, based on their review of the medical records, Dr. Callaghan and Dr. Hannah did not agree with the level of

functional impairment assessed by Dr. Drew or testified to by Plaintiff. Although the ALJ did not completely accept Dr. Callaghan's opinion that Plaintiff could perform light work, his medical opinion supports the ALJ's ultimate conclusion that Plaintiff was able to at least perform sedentary work. The ALJ thoroughly discussed and considered the medical evidence of record and reached a fully supported conclusion as to RFC. Plaintiff has shown no violation of the treating physician rule or other legal error warranting remand in this case. The ALJ fully evaluated the entirety of the record and properly weighed the competing medical evidence in fulfilling his administrative responsibility to assess Plaintiff's RFC. See 20 C.F.R. § 404.1546(c).

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 7) be GRANTED and that Plaintiff's Motion to Reverse or Remand Commissioner's Decision (Document No. 6) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 16, 2012